DEUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>DEVON PARRAMORE,<br><br>　　　　　　　Defendant. | CASE NO. CR18-156-RSM<br><br>ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE |

## I.　INTRODUCTION

This matter comes before the Court on Defendant Devon Parramore's Emergency Motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Dkt. #33. Plaintiff United States of America ("the Government") has opposed Defendant's motion. Dkt. #35. The Court finds oral argument unnecessary to rule on this motion. Having considered the Motion, the Government's Response, and the remainder of the record, the Court GRANTS Mr. Parramore's motion for compassionate release.

## II.　BACKGROUND

On June 20, 2018, a grand jury indicted Mr. Parramore for methamphetamine distribution to an undercover agent and a confidential informant in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Dkt. #1. Mr. Parramore pleaded guilty to all charges on October 22, 2018. Dkt.

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 1

#21. On January 18, 2019, this Court sentenced him to a 33-month prison term followed by three years of supervised release. He is currently housed at FCI Terminal Island ("Terminal Island") with a projected release date of July 22, 2020.

Mr. Parramore is 52 years old and requires urgent surgical treatment to save his deteriorating vision from glaucoma. On January 17, 2019, an off-site specialist in Seattle diagnosed Mr. Parramore with "severe stage" glaucoma in both eyes. Dkt. #33-2 at 3. An on-site specialist at Terminal Island examined Mr. Parramore four months later, on May 8, 2019, and recommended "immediate eval & treatment." Dkt. #33-4 at 1. On June 6, 2019, he received a follow-up on-site evaluation by a specialist at Terminal Island, who referred him to an off-site ophthalmologist. Dkt. #33-5 at 5 ("This is now a monocular patient with high risk of visual loss and this should be priority to get appointment and proper glaucoma treatment surgically as he is on maximal medication which is insufficient."). These follow-up visits with the off-site ophthalmologist occurred on June 27, 2019 and August 7, 2019, wherein the ophthalmologist recommended a laser treatment procedure. Dkts. #33-7; #33-8 at 1 ("Plan: YAG laser assisted Iridotomy and possible Iridoplasty . . . ."). Although BOP medical personnel scheduled the procedure, the Government acknowledges "it is not clear from the medical records whether this procedure occurred and, if so, what the outcome was." Dkt. #35 at 2-3.

Mr. Parramore's medical records indicate that he did not receive a follow-up evaluation until February 19, 2020. During this visit, the on-site ophthalmologist determined that Mr. Parramore needed an immediate referral because he was going blind. Dkt. #33-10 at 3 ("[N]eeds glaucoma referral ASAP . . . Pt. going blind. If unable to get referral suggesting release and get care ASAP."). A follow-up note dated February 20, 2020 adds that Mr. Parramore has "[s]ignificant damage due to glaucoma needs specialist for evaluation and eventual surgical

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 2

prognosis advance disease OS." *Id.* at 5. The Government concedes that nothing in Defendant's medical records indicate that any referral occurred.

Since Mr. Parramore's on-site examination in February 2020, the conditions at Terminal Island have changed rapidly due to the coronavirus pandemic. The Bureau of Prisons ("BOP") website reports that Terminal Island has suffered one of the largest outbreaks of COVID-19 out of all BOP facilities across the country. *See* Federal Bureau of Prisons, Covid-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited June 5, 2020) (Reporting 32 COVID-positive inmates, 657 inmates designated "recovered," and 9 inmate deaths). On or about April 27, 2020, Mr. Parramore tested positive for COVID-19. Dkt. #33-11. The Government contends that he has not experienced complications from the infection, and that medical staff examining him on May 10, 2020 determined he had recovered. Dkt. #35 at 12.

On May 15, 2020, Mr. Parramore was appointed counsel. Dkt. #32. On May 20, 2020, his counsel filed a BP-9 application with BOP staff for a reduction in his sentence in light of the serious progression of his glaucoma condition. Dkt. #33-13 at 2. As of the date of this order, the BOP has not addressed Mr. Parramore's request for compassionate release.

### III.   DISCUSSION

**A. Legal Standard**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended Section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release:

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 3

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (italics reflecting amendment under First Step Act). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id*.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 4

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13. Given that Mr. Parramore is 52 years old, only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to his motion. Thus, under the policy statement, Mr. Parramore is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

The Sentencing Commission's application notes to this policy statement provide further guidance on medical conditions that may warrant compassionate release. Application Note 1 to USSG § 1B1.13 provides that "extraordinary and compelling reasons" for a sentence reduction exist when:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 5

USSG 1B1.13 cmt. n.1(A). The application note also addresses family circumstances and circumstances involving defendants who are at least 65 years old. *See id.* at n.1(B)-(C). Neither of these circumstances are applicable to Mr. Parramore's motion. Furthermore, subpart (D) provides a catch-all provision for "other reasons" that may exist as determined by the Director of the BOP. *Id.* at n.1(D). Mr. Parramore does not contend that the Director of BOP has determined that an extraordinary or compelling reason for a sentence reduction exists here.

Thus, under the policy statement, Mr. Parramore is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

### B. Exhaustion of Administrative Remedies

As an initial matter, the Government argues that Mr. Parramore has failed to comply with the exhaustion requirements in 18 U.S.C. § 3582(c)(1). Dkt. #35 at 8. Because 30 days have not elapsed from the time Mr. Parramore's counsel emailed a petition to BOP, the Government argues that this Court lacks jurisdiction to consider Defendant's Motion until June 19, 2020. *See* Dkt. #33-13 at 2 (Petition to BOP dated May 20, 2020).

Parties dispute whether Section 3582's exhaustion provision is a jurisdictional requirement or a claim-processing rule and, if the latter, whether a court may excuse exhaustion in certain cases. *Compare* Dkt. 33 at 11-14 *with* Dkt. #35 at 5-7. District courts across the country have reached different conclusions on these questions, including courts within this circuit. *Compare United States v. Fischman*, No. 16-cr-00246, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020), *with United States v. Catledge*, No. 12-cr-00678, 2020 WL 1899401, at *2 (N.D. Cal. Apr. 16, 2020). While these questions are now pending before the Ninth Circuit, *see United States v. Millage*, No.

20-30086 (9th Cir. filed April 15, 2020), courts in this district have consistently found that the urgency created by the COVID-19 crisis does not create an exception to the exhaustion requirement. *See, e.g.*, *United States v. Stanard*, No. CR16-320-RSM, 2020 WL 1987072, at *3 (W.D. Wash. Apr. 27, 2020) (collecting cases); *see also United States v. Fuller*, No. CR17-0324JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020) ("[T]his court and other district courts in the Ninth Circuit who have considered this exact issue . . . have near unanimously concluded that failure to exhaust administrative remedies is fatal to a compassionate release petition even in light of the urgency created by COVID-19.").

The Court need not reach these questions here. Notwithstanding this district's consistent application of the 30-day exhaustion requirement, courts in the Western District of Washington have recognized circumstances where a defendant "effectively exhausted her administrative remedies" despite failure to strictly comply with the 30-day requirement. *See, e.g.*, *id.* (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *1 (E.D. Wash. Mar. 31, 2020)). In *Gonzalez*, the court concluded that an inmate transferred out of BOP custody had "effectively exhausted her administrative remedies by petitioning the BOP, giving them notice, and being told she does not have any other administrative path or remedies she can pursue." The court reached a similar conclusion in *United States v. Van Dyke*, finding that "further attempts to exhaust administrative remedies at this time would require Defendant to continue to wait in the Spokane County Jail until transfer . . . and wait for the request to be denied or for 30 days to elapse following the request." No. 2:15-CR-0025-JLQ-1, 2020 WL 1811346, at *2 (E.D. Wash. Apr. 8, 2020), *adhered to on reconsideration*, No. 2:15-CR-0025-JLQ-1, 2020 WL 1845553 (E.D. Wash. Apr. 10, 2020)).

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 7

Case 2:18-cr-00156-RSM   Document 37   Filed 06/08/20   Page 8 of 15

In both *Gonzalez* and *Van Dyke*, the defendants had been transferred out of BOP custody and consequently could not formally petition BOP to start the 30-day clock. *See, e.g.*, *id.* ("Defendant is housed at the Spokane County Jail, and all transports to BOP Custody have been ceased due to COVID-19 . . . Defendant is not in the custody of the BOP. Therefore, there is no warden to petition."). Although Mr. Parramore remains in BOP custody and has finally obtained the means to file a formal petition, the Court finds that the unusual circumstances set forth below liken his situation to those of the defendants in *Gonzalez* and *Van Dyke*. Specifically, in each of these cases, BOP was on notice of a request for the defendant's release yet, for compelling reasons, the defendant was unable to formally petition BOP pursuant to the requirements of Section 3582. *Cf. United States v. Dailey*, No. 2:13-CR-00118 KJM, 2020 WL 2195926, at *3 (E.D. Cal. May 6, 2020) (Finding failure to exhaust where "defendant has not notified the BOP in any way nor received a response as did the defendant in *Gonzalez*.").

As reflected in Mr. Parramore's medical records, BOP has been apprised of the severity of Mr. Parramore's medical condition since mid-February. *See* Dkt. #33-10 (February 19, 2020 notes from on-site physician stating, "needs glaucoma referral ASAP . . . Pt. going blind. If unable to get referral suggesting release and get care ASAP."). As a result, it has been on-notice of Mr. Parramore's urgent condition for far longer than the thirty days required under Section 3582, had it received a request directly from Defendant. At the same time, while Mr. Parramore may have formally petitioned BOP after this dire prognosis, his significant vision loss raises serious concerns about his capacity to file a petition on his own behalf. *See* Dkt. #33-1 at 1 (Describing vision loss as so severe that he cannot ascend stairs and requires a lower bunk). Indeed, in referring to Mr. Parramore's failure to seek relief on his own behalf, his counsel claims that he is "incapable of making that request himself." Dkt. #33-13 at 2. Defendant's counsel also states, "It is my

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 8

understanding that [Mr. Parramore] does not have access to pen and paper" to make the formal request to BOP. *Id.* at 2; *see also* Dkt. #33 at 4 ("Counsel has been advised through Mr. Parramore's romantic partner that Mr. Parramore is unable to make the request for compassionate release himself, as the institution cannot provide him with paper or pen to make the request."). Defendant further claims that Mr. Parramore's COVID-19 diagnosis "undoubtedly complicat[ed] his efforts to make this request." *Id.* at 4. The Government has not addressed any of these compelling obstacles in its response. *See generally* Dkt. #35. Instead, now that Mr. Parramore has obtained counsel, it insists that only his attorney's formal request to BOP—not available to Mr. Parramore until three months after his prognosis by BOP's on-site physician—is sufficient to start the 30-day clock.

Considering the unique confluence of factors in this case, wherein BOP was on-notice of Mr. Parramore's release recommendation from an on-site medical expert since at least February 19, 2020, and where the Government does not address any of Defendant's alleged obstacles that prevented him from formally petitioning BOP earlier, Mr. Parramore has waited far longer than thirty days for BOP to consider whether to recommend his release based on his severe glaucoma. Accordingly, the Court finds that Defendant has effectively exhausted his administrative remedies and will address the merits of his motion.

### C. Entitlement to Compassionate Release

   1. <u>Extraordinary and Compelling Reasons</u>

Mr. Parramore's motion establishes that extraordinary and compelling reasons exist to reduce his sentence. *See* USSG § 1B1.13(1)(A). First, Mr. Parramore's glaucoma, which has already resulted in blindness in one eye, constitutes a serious medical condition that significantly impacts his day-to-day living and affects his ability to provide self-care. USSG § 1B1.13 cmt.

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 9

n.1(A)(ii)(I); *see* Dkt. #33-1 at 1 (Defendant cannot ascend stairs and requires a lower bunk due to severe vision loss).  It is likewise apparent that without the surgery, his condition will continue to deteriorate.  Dkt. #33-10 at 4-5 (Recommending immediate treatment from specialist based on significant damage from glaucoma).  The Government does not dispute the severity of his condition.  *See* Dkt. #35 at 14 (There is no doubt that this is a serious condition, and that as reflected in the medical records, that condition requires expert medical attention.").

In addition, while BOP might have been able to provide Defendant with specialist treatment in ordinary circumstances, it is apparent that the COVID-19 outbreak at Terminal Island has undermined BOP's ability to provide him with the immediate care required to treat his declining vision.  *See id.* at 16 ("[T]he government sympathizes with Parramore's struggle with glaucoma and recognizes that COVID-19 has almost certainly disrupted the planned expert examination."). Indeed, despite a dire warning from an on-site doctor in February 2020, Mr. Parramore has been unable to receive the referral and surgical care. The Government does not contend that BOP will be able to provide Mr. Parramore with the appropriate medical care before his July 2020 release date.  Thus, because Mr. Parramore's condition will continue to deteriorate between now and his release date, he suffers from a condition from which he is not expected to recover.  *See* USSG § 1B1.13 cmt. n.1(A)(ii)(I).

Despite acknowledging BOP's inability to provide Defendant with appropriate treatment for his glaucoma during the COVID-19 health crisis, the Government argues that relief should be denied because the pandemic has also affected medical care outside of Terminal Island.  *See* Dkt. #35 at 15 ("[E]ven if the defendant were not an inmate, the opportunity to obtain the recommended procedures was extremely limited over the past three months.").  The Court finds the Government's assessment of Mr. Parramore's access to treatment outside of Terminal Island

speculative and unsupported. Moreover, regardless of how the COVID-19 pandemic has impacted medical care outside the facility, it is undisputed that while under BOP's care during the health crisis, Mr. Parramore has been unable to obtain the necessary treatment for his severe glaucoma. For these reasons, the Court finds that he has demonstrated extraordinary and compelling reasons warranting his early release.

2. <u>Danger to Others or the Community</u>

In determining whether a defendant presents a danger to any person or to the community, a court looks at the nature and circumstances of the defendant's underlying offense, the weight of evidence against him or her, his or her history and characteristics, and the nature and seriousness of the danger his or her release would pose to any person or the community. *See* 18 U.S.C. § 3142(g).

The Government argues that Mr. Parramore presents a "great risk of recidivism" based on the nature and circumstances of his underlying offense, his long history of noncompliance on release, and a January 2020 infraction during his confinement at Terminal Island. Dkt. #35 at 15-16. The Government specifically cites Mr. Parramore's 30-year criminal history, which includes more than 20 years in prison. *Id.* (citing Dkt. #26 at ¶¶ 26-46). It also cites to the fact that Mr. Parramore was arrested for the underlying offense of selling methamphetamine while on supervisory release, and that he has previously demonstrated non-compliance on release. *Id.*

As an initial matter, Defendant contends that any risk he poses to the community is mitigated by the fact that he is blind in one eye and at risk of losing sight in the other eye. Dkt. #33 at 9. The Government does not address Defendant's declining vision in the context of his possible danger to others. *See* Dkt. #35 at 16. Accordingly, the Court is persuaded that Mr.

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 11

Parramore's deteriorating vision reasonably diminishes his likelihood of recidivism given his inability to function as independently as he did prior to losing his eyesight.

Mr. Parramore's criminal history and disciplinary record at BOP likewise do not support a finding that he poses a danger to others or to the community. The Government does not dispute that the only violent incident in Mr. Parramore's criminal history occurred more than thirty years ago. *See* Dkt. #33 at 9 (referencing 1989 conviction for simple assault). The Court also considers the fact that the underlying conviction here was for a non-violent drug offense. While the danger posed by even a non-violent drug offense cannot be discounted, the Government does not expressly argue that Mr. Parramore poses any danger to the community at this point. Instead, it merely argues that Defendant is "at great risk of recidivism." Dkt. #35 at 16. Furthermore, the infraction Mr. Parramore received in January 2020 was for being in the wrong unit without permission. Dkt. #33-14 at 1. He has received no other sanctions during his confinement. For these reasons, the Court finds that Mr. Parramore's criminal history and disciplinary history at Terminal Island do not indicate that he would pose a danger to the community if released.

Finally, the Court is aware of Mr. Parramore's mental health and substance abuse problems. These issues, in addition to Defendant's lengthy criminal history, were the basis for this Court's September 17, 2018 order that Mr. Parramore be detained pending trial. *See* Dkt. #15 at 1. However, considering that the Government does not raise these mental health and substance abuse issues in its response and the fact that Mr. Parramore has approximately six weeks remaining on his 33-month sentence, the Court does not find that these concerns raised prior to Mr. Parramore's confinement at Terminal Island weigh against his immediate release.

Accordingly, based on these factors, the Court finds that Mr. Parramore does not present a danger to others or to the community upon release.

### 3. Reduction Consistent with USSG Policy Statement

Having found that that Mr. Parramore's deteriorating vision constitutes an extraordinary and compelling reason warranting compassionate release and that he poses no danger to others or to the community, the Court must now consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The Court finds that these factors weigh in favor of granting Mr. Parramore release. While Mr. Parramore's underlying offense of methamphetamine distribution was serious, he has approximately six weeks remaining on his 33-month sentence. *See* Dkt. #21 (Release date set for July 22, 2020). The Government insists that Mr. Parramore is at high risk of recidivism based on his criminal history and history of non-compliance on probation, but its argument does not address his deteriorating vision. *See* Dkt. #35 at 15. Release likewise would not result in unwanted sentence disparities and remains consistent with the sentencing guidelines, as he will have served more than 31 months. *See* Dkt. #27 at 1 (Guideline Provisions set forth range between 30 and 37 months). As a result, the Court finds that reducing Mr. Parramore's sentence to time served remains consistent with the guidelines and still promotes respect for the law and provides just

punishment adequate to deter future criminal conduct. Finally, there are no victims of Mr. Parramore's underlying conviction that require restitution. Indeed, the only individuals directly involved in Defendant's crime were an undercover agent and confidential informant.

Accordingly, having considered the factors under Section 3553(a), the Court finds that compassionate release is consistent with the USSG policy statement.

### D. Positive COVID-19 Test

Finally, while a court's decision to grant a defendant's motion for compassionate release ordinarily results in immediate release from BOP custody, meaning no later than 24 hours from entry of the order, the Court must account for the fact that Mr. Parramore has tested positive for COVID-19. Consistent with the Government's recommendation for a quarantine period prior to release, *see* Dkt. #35 at 16, the Court imposes the additional release condition of a 14-day quarantine period unless Mr. Parramore's exit testing confirms that he is no longer COVID-19 positive.

## IV. CONCLUSION

For the reasons set forth above, Mr. Parramore's motion for compassionate release, Dkt. #33, is GRANTED, and the term of imprisonment imposed is hereby reduced to the time the defendant has already served.

IT IS FURTHER ORDERED that unless exit testing establishes he is no longer COVID-19 positive, Mr. Parramore must be placed in quarantine for 14 days to ensure he does not transmit the virus to his community.

IT IS FURTHER ORDERED that upon release, the defendant shall begin serving the three-year term of supervised release previously imposed by the Court. He shall contact the United States

Probation Office in Seattle and/or California within 24 hours of his release and follow its instructions.

IT IS SO ORDERED.

Dated this 8th day of June, 2020

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S
EMERGENCY MOTION FOR
COMPASSIONATE RELEASE - 15